In the Matter of WILLIAM BLANCHARD, an Attorney, Respondent. GRIEVANCE COMMITTEE OF THE EIGHTH JUDICIAL DISTRICT, Petitioner.

Fourth Department, January 31, 1992

### APPEARANCES OF COUNSEL

*Gerard M. LaRusso* for petitioner.

*Harold J. Boreanaz* for respondent.

### OPINION OF THE COURT

Per Curiam.

William Blanchard was admitted to the practice of law by this court on March 14, 1956. In May 1990, the Grievance

Committee for the Eighth Judicial District filed a petition charging him with violation of three disciplinary rules in connection with his representation of a client: Code of Professional Responsibility DR 1-102 (A) (6), engaging in conduct that adversely reflected on his fitness to practice law; DR 5-101 (A), accepting employment when the exercise of his professional judgment was affected by his own financial interests; and DR 9-101, not avoiding the appearance of impropriety.

Respondent admitted each of the allegations of the petition with an explanation, and alleged matters in mitigation. The matter was referred to a Referee, who filed his report. The Grievance Committee moved to confirm the report. Respondent did not oppose confirmation of the report but sought a minimum sanction.

The Referee found that the client was a retired, unmarried school teacher who resided alone. Respondent's father began representing her in the late 1940's. Upon his father's death in 1973, respondent began representing her and continued to do so until the client's death, at age 95, on October 10, 1985. When the client died, the closest living relatives were first cousins once removed.

In December 1982, the client's assets consisted of bank deposits of $124,500, savings bonds with a face value of $5,000, a life insurance policy, miscellaneous jewelry and apartment furnishings. On December 9, 1982, respondent as attorney-in-fact consolidated her bank accounts. Eight days later he withdrew $84,487.64 for his own purposes. The next day he withdrew $40,000 more and put it in a joint account with the client and himself. Six days after that he withdrew $5,000 from the joint account and put it in a checking account in the client's name.

On March 10, 1983, respondent prepared and supervised the execution of a new will wherein the client designated him sole legatee as well as executor. The same day he was also substituted for one of the client's deceased brothers as the sole beneficiary of her life insurance and the savings bonds. Two weeks later he closed her safe-deposit box, delivered some jewelry to her, and put the rest in his own safety deposit box.

On April 11, 1984, he closed the original consolidated account by withdrawing $1,106.67 and depositing it in his own account. On July 3, 1984, he withdrew $15,000 and $10,000 from the joint account and put both sums in his own account. From those funds he withdrew $5,000 and put it in her

checking account. Respondent closed the joint account on November 8, 1984 by withdrawing the balance, $12,269.43, payable to his order. He put $8,000 of that balance in his own account and $4,269.43 in a joint account with his wife.

Other than a general power of attorney, respondent had no written authorization from the client when he transferred over $121,000 of her assets to himself. No notice was given to her relatives. He orally advised her to some extent of her right to seek independent counsel but no such advice was memorialized in writing. Respondent concedes that his conduct could create the appearance of impropriety.

Respondent never filed gift tax returns for the money he received in 1982, 1983 or 1984.

The client became ill on the Labor Day weekend of 1985, and died in her apartment on October 10, 1985. She was alert and attentive to detail to the end and was a frugal, cautious person who was very private with her financial affairs. She had kept records for many years and maintained an informal diary by notes on calendars. Calendar notes reflected her awareness that respondent had invested her money.

The client had told her landlord and her nearest relatives, first cousins once removed, that respondent should be contacted if anything happened to her and she told the cousins that she wanted respondent to make her funeral arrangements. Respondent paid all bills for her health care during her final illness, which the cousins knew because they visited regularly. Immediately after the funeral, respondent discovered that the client's apartment had been cleaned out and many records discarded.

The cousins inquired through an attorney about the client's assets. Respondent responded promptly. The will naming him as sole legatee was never admitted to probate and he renounced all interest under the will. A cousin was appointed administratrix and sued respondent. He cooperated and waived the confidentiality of the disciplinary proceedings. The lawsuit was settled by payment of $115,000 from respondent to the estate. The administratrix stipulated that he had voluntarily surrendered an arguably viable claim to the assets.

Respondent has not previously been the subject of a disciplinary proceeding and he has fully cooperated with the investigation. There was no indication that he ever denied any financial request of the client or that her life-style was ad-

versely affected and he testified that all money transferred was available to her if she needed it.

While respondent's actions may have been taken with the knowledge and approval of his client, his failure to document the client's consent and approval of his activities and his failure to insist that the client seek independent counsel constitutes a violation of both DR 5-101 (A) and DR 9-101. In mitigation, respondent promptly responded to all inquiries by her relatives made through their attorney after the client's death, waived the confidentiality of the disciplinary proceedings so that the attorney for the administratrix would have access to that information and, after litigation was commenced, deposited sufficient assets into his escrow account to assure that any successful claim against him would be paid.

Accordingly, we confirm the findings of fact in the Referee's report and conclude that respondent should be suspended from practice for a period of one year and until further order of the court.

BOOMER, J. P., PINE, BALIO, LAWTON and DAVIS, JJ., concur.

Order of suspension entered.